IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-HC-2191-D

**Keith D. Phillips**,

          Petitioner,

v.

**Thomas Smith**, Warden,

          Respondent.

**Order &
Memorandum & Recommendation**

Petitioner Keith D. Phillips filed a petition under 28 U.S.C. §2241 challenging the outcome of a disciplinary proceeding at FCC Terre Haute ("Terre Haute") in Indiana that resulted in, among other things, the loss of good-time credits. *See* Pet. ¶ 6. Also before the court are Phillips's motion to require the Government to respond to his petition (D.E. 8) and his motion for a court ordered polygraph test (D.E. 20).

Respondent Thomas Smith requests that the court dismiss Phillips's Petition because it fails to state a claim upon which relief may be granted. D.E. 16. Because Smith included documents outside the pleadings with his motion, the court has converted the motion to dismiss to a motion for summary judgment. Phillips' received notice of the court's decision and submitted additional documents. D.E. 29.

A review of the filings demonstrates that prison officials complied with the Due Process Clause's requirements in connection with Phillips's disciplinary hearing. Additionally, Phillips's claim of a violation of his First Amendment rights cannot be heard in this action and, instead, must be brought in a separate § 1983 action. Therefore, the Smith's motion should be granted and the district court should dismiss Phillips's Petition.

**I.  Background**

On August 26, 2016, while confined at Terre Haute, Phillips was charged with a "Code 224" for the offense of Assaulting Any Person. *See* Incident Rpt., D.E. 17–1 at 6. Correctional Officer Iseman authored the Incident Report regarding the relevant events.  See id.  The Incident Report alleges that at 8:30 p.m. on August 26, 2015, Philips became combative while at the Terre Haute Union Hospital. *See id.* While attempting to leave his bed, Phillips attempted to kick and spit on Iseman while Iseman attempted to keep him calm and restrained. *See id.* The scuffle lasted for several minutes until other staff arrived and assisted Iseman in maintaining control over Phillips. *See id.* Officers then escorted Phillips back to Terre Haute. *See id.* Phillips received a copy of the Incident Report at 4:00 a.m. on the day after it was filed. *See id.* Phillips generally denies these allegations.  D.E. 29.

After investigation, the Unit Disciplinary Committee ("UDC") referred the charge to the Discipline Hearing Officer ("DHO"). *See* Incident Report at 1. On September 10, 2015, the DHO convened a hearing. *Id.* Phillips was informed of, and waived, his rights to a staff representative and to call witnesses at the hearing. *See id.*

The DHO considered the allegations in the Incident Report, and a memorandum by Lt. McPherson. These documents claimed that Phillips became combative what at the hospital and that he attempted to kick and spit on Officer Iseman as officers tried to restrain him. *See* DHO Rpt., D.E. 17–1 at 3. The DHO also considered memoranda by two other correctional officers which corroborated Lt. McPherson's observations. *See id.* at 3–4.

Phillips denied all allegations that he assaulted Iseman. The DHO considered the following statement from Phillips:

> I was sent to the emergency room and the restraints on me were so tight that I could not feel my right arm. The officers would not loosen the restraints. When

> they took me to the CT scan, I had a panic attack, so they had to take me back to the emergency room. When Lt. McPherson arrived, Iseman closed the blinds and the door. I kept asking them to remove my restraints, and Iseman told me to be quiet. I started having another panic attack and I raised up. Iseman pushed me down on the bed. He put his arm across my throat. I'm yelling that can't [sic] breathe and then he pulls my IV out. I feel someone tugging on my feet and it was the Lt. holding my leg irons down. The RN comes in and looks at my IV's and then goes and tells the doctor. I did not assault the officer.

DHO Rpt., D.E. 17–1 at 1.

Phillips also submitted a four-page written statement which was reviewed and considered by the DHO. *Id.* at 2. In the written statement, which was summarized in the DHO Report, Phillips stated that his handcuffs were too tight; his circulation was being cut off; and he suffered a panic attack while preparing for a CT scan due to claustrophobia. *See id.* at 4.

Phillips also claimed that he started having another panic attack when he returned to the emergency room. *See id.* The panic attack caused him to sit up in bed. *See id.* The escorting officer pushed him down on the bed and told him to quit resisting. *See id.* The escorting officer placed his arm over his neck and put his body weight on Phillips's throat while the Lieutenant was holding his leg irons. *See id.* Phillips was returned to the institution for refusing treatment. *See id.* He claims he never attempted to kick Iseman or spit in Iseman's face. *See id.*

At the conclusion of the hearing, the DHO found that Phillips had committed the offense charged. The DHO disbelieved Phillips's evidence that he was suffering panic attacks at the hospital based on the fact that although Phillips's medical history showed he had had two purported panic attacks, in 2011 and 2012, there was no additional information provided regarding Phillips's history with panic attacks. *See id.* Additionally, there was no documentation to indicate Phillips has had a panic attack or complained of a panic attack in the past three years. *See id.*

The DHO also relied on Phillips's admission that he became disruptive to the point he had to be subdued when he raised up off the bed "which is a direct security concern on an escorted trip." *See id.* The DHO considered Phillips's acknowledgement in his written statement that he was being combative with staff as he was being assaulted. *See id.* As a result of the finding, sanctions were imposed. *Id.* at 5. On October 14, 2015, Phillips was advised of the findings, specific evidence relied on, and sanctions and reasons for the sanctions. *Id.*

Phillips unsuccessfully appealed the DHO's decision to the Regional Director and following that, to the Central Office. *See* Pet'r's Ex. 1–5, D.E. 1–2; *id.* at 43–44.

## II.    Discussion

Initially, Smith requested that the court dismiss Phillips's Petition under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. However, the motion asked the court to consider documents beyond the pleadings submitted by Philips. The court notified Phillips that it was going to convert the motion to dismiss into a motion for summary judgment under Rule 12(d) and consider the documents Smith submitted. Phillips submitted additional documents in support of his position.  D.E. 29.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247– 48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248– 49, but " must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### A. Overview of Inmate Due Process Rights in Connection with Loss of Good Time Credits

Before he is entitled to a writ of habeas corpus under 28 U.S.C. § 2241, Phillips must show that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Here, Phillips argues that prison officials unconstitutionally deprived him of good-time credits because he did not receive sufficient advanced notice of the charges against him and the evidence that would be used to support those charges and corrections officers presented false evidence to the DHO. Pet. at 6–9, D.E. 1. He also claims prison staff violated his First Amendment rights were violated because the charge was in retaliation for his having filed grievances. *See id.* at 8, 10. The Government contends that the petition should be dismissed because it fails to state a claim upon which relief should be granted.

The Supreme Court has explained that the due process clause provides inmates with certain procedural safeguards before they can lose statutory good time credit is at issue. *See Wolff v. McDonnell,* 418 U.S. 539, 557 (1974). Under *Wolff*, an inmate is entitled to the following: (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) a written statement by the factfinders as to the evidence relied on and the reasons for disciplinary action; and (3) the opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Id.* at 564–66.

In addition to these procedural safeguards, a DHO findings revoking a prisoner's good-time credit must be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." *Id.* at 455–56; *Baker v. Lyles,* 904 F.2d 925, 932 (4th Cir. 1990) (quotation omitted). The "some evidence" standard is a highly deferential standard of review. *See Hill*, 472 U.S. at 455–56.

### B.  Due Process Claim – Advanced Notice

Phillips claims that prison staff violated his right to receive sufficient written notice of the disciplinary charges against him and the evidence in support of the charges. As noted above, inmates are entitled to written notice of the charges against him at least 24 hours before the hearing. *See Wolff*, 418 U.S. at 557. In the documents he submitted with his Petition, Philips states that he "was first made aware and given a copy of" the incident report on September 8, 2015, at 11:47 a.m. D.E. 1–2 at 1. The documents go on to state that his disciplinary hearing took place on September 10, 2017. *Id.* Thus, it appears that Philips received notice of the charge against him and the basis for that charge more than 24 hours before his disciplinary hearing. There is no indication in the record that prison officials failed to comply with the procedural requirements for inmate disciplinary proceedings established by the Supreme Court.  This claim should be dismissed.

### C.  Due Process – Disputed Evidence

Next, Phillips argues that his due process rights were violated when correctional officers lied about the events that resulted in the loss of his good time credits. Contrary to the officers'

6

allegations, Philips claims that he did not kick or spit on Officer Iseman. D.E. 1–2 at 2. These arguments were presented to the DHO during the hearing and, apparently, rejected by the DHO. *Id.*

Although courts must ensure that disciplinary convictions resulting in a revocation of good time credits are supported by "some evidence in the record[,]" *Hill,* 472 U.S. at 454, a court is not required to undertake an "independent assessment of the credibility of witnesses, or the weighing of the evidence." *Hill,* 472 U.S. at 455. As stated, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. *See also*, *Boyd v. O'Brien*, Civil Action No. 7:08cv00289, 2008 WL 2074073, at *4 (W.D. Va. May 14, 2008) (stating that "[f]ederal courts will not review the accuracy of a disciplinary committee's finding of fact;" the factual findings "will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious;" and an agency's decisions will not "be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute.") (citations omitted).

Phillips claims that Smith's motion should be denied because he has presented sufficient evidence to establish a genuine issue of material fact. While there is certainly a dispute over what happened at Terre Haute Union Hospital, there is no dispute over the materials the DHO considered in rendering his decision against Phillip and whether there is some support for that decision in the record. Given that this court is not assessing Phillips's claim on a blank slate but, instead, is assessing whether there is some evidence to support the DHO's decision, the continuing dispute over what actually took place at the hospital does not require a denial of Smith's motion.

The DHO found Phillips guilty of violating Code 224, which prohibits assault on another person, even if the assault does not result in serious physical injury. *See* 28 C.F.R. § 541.3 Table 1. The record reflects that the DHO considered the conflicting testimony presented by the parties and determined that it was appropriate to believe credit the statements of the correctional officers over Phillips's statements. There is no question that there is some evidence in the record to support the DHO's decision, and that, according to the Supreme Court, is all the Due Process Clause requires. Thus, Phillips's claim should be dismissed.

D. **First Amendment Retaliation**

Finally, Phillips argues that his First Amendment rights were violated because the disciplinary action was taken in retaliation for his having filed grievances against PA Daugherty and Medical Records staff. *See* Pet. at 8, 10 (Ground Three). Phillips may not pursue this type of claim in a habeas corpus action. Instead, a prisoner challenging the conditions of his confinement must bring his claims under 42 U.S.C. § 1983 (if a state inmate) or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (if a federal inmate). *Id.*; *see Wilson v. Johnson*, 535 F.3d 262, 265 (4th Cir. 2008); *Winslow v. Samberg*, 805 F.2d 394, at *2 (4th Cir. 1986) ("to determine whether a claim is cognizable as a habeas corpus action or under § 1983, it is necessary to review whether the challenge is to the fact or the duration of a prisoner's confinement, or whether it is a challenge to the conditions of confinement."). Based upon the foregoing, petitioner may not proceed with his claims pursuant to 28 U.S.C. § 2241. *See id.*[1] This claim should be dismissed.

---

[1] The court has reviewed the petition and finds it inappropriate to convert petitioner's § 2241 petition into a § 1983 complaint because the requirements of the Prison Litigation Reform Act do not apply to § 2241 actions. *See Smith v. Angelone*, 111 F.3d 1126, 1129–31 (4th Cir. 1997); *Hicks v. James*, 255 F. App'x 744, 747 (4th Cir. 2007) (per curiam). Moreover, the court notes parenthetically that, even if plaintiff had filed his claim pursuant to § 1983, his complaint would

### III.     Motion Ordering the Government and Bureau of Prisons to Respond

On October 31, 2016, Phillips filed a motion for an order requiring the Government to respond to his § 2241 petition (D.E. 8). In light of the present posture of this case, where the Government has filed its Motion to Dismiss, the motion should be denied as moot.

### IV.     Motion for Court Ordered Polygraph Test

Phillips has requested the court to enter an order requiring the Government to give him a polygraph test which, he claims, would bolster his credibility against the false disciplinary charge. D.E. 20. However, the Due Process Clause does not provide a federal right to take a polygraph test in a disciplinary hearing. *See, e.g.*, *Williams v. Werlinger*, 451 F. App'x 127, 2011 WL 4392173, at *2 (3d Cir. 2011) (per curiam) (unpublished table decision) (no due process violation in habeas context when federal prisoner was denied the opportunity to take a lie detector test for a disciplinary hearing; such right is not protected under due process); *Patterson v. Gilmore*, 974 F.2d 1340, 1992 WL 206784, at *2 (7th Cir. 1992) (unpublished table decision) (inmate has no constitutional right to a polygraph test); *Wigal v. Wilson*, 865 F.2d 262, 1988 WL 134548, at *1 (6th Cir. 1988) (unpublished table decision) (no right to polygraph or forensic tests); *United States v. DeRobertis*, 508 F. Supp. 360, 362 (N.D. Ill. 1981) (in disciplinary hearing, petitioner is not entitled to a polygraph examination to exonerate himself).

Phillips argues that *DeRobertis'* statement that "such procedures may at times be necessary to ensure fundamental fairness," *see DeRobertis,* 508 F. Supp. at 362, supports his request for a polygraph. *See* Pet'r's Reply to Gov't's Resp. to Mot., D.E. 22. However, the court in *DeRobertis* found no right to a polygraph test where evidence supported the finding that the

---

not survive review because mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

inmate had committed the assault as charged. *See DeRobertis*, 508 F. Supp. at 362–63. Phillips has failed to show that denial of a polygraph examination violates his federal constitutional rights and this motion should be denied.

## V.     Conclusion

For the reasons above, Phillips has failed to show a ground for relief under 28 U.S.C. § 2241. Therefore, the undersigned recommends that the court dismiss Phillips's § 2241 petition (D.E. 1) without prejudice. The undersigned also orders that Phillips's motions to order the Government to respond (D.E. 8), and for a court ordered polygraph test (D.E. 20) are denied.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on petitioner. Petitioner shall have until Monday, August 28, 2017, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If petitioner does not file written objections to the Memorandum and Recommendation by the foregoing deadline, petitioner will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, petitioner's failure to file written objections by the foregoing deadline will bar petitioner from appealing to the**

**Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

Dated: August 14, 2017.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE